William W. McCOLLUM, Plaintiff,

v.

Max J. MAYFIELD et al., Defendants.

No. 7031.

United States District Court,
N. D. California, N. D.
March 25, 1955.

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Plaintiff alleges that while in the custody of defendants awaiting trial, he was forced to perform labor in the County Jail and suffered personal injuries of a serious nature; that defendants refused him medical care and placed him in a vermin infested cell; and that such conduct and omissions caused him to become permanently paralyzed and disabled.[1] Defendants move to dismiss on the ground that the complaint does not state a claim for relief.

Plaintiff contends that the conduct alleged is a deprivation, without due process of law, of plaintiff's right to life, liberty and property protected under the due process clause of the Fourteenth Amendment to the United States Constitution. Plaintiff has met the basic requirements of Section 1983 as a matter of pleading by alleging that he was being held under color of state law and that he was subjected to a deprivation of rights, privileges and immunities secured by the Federal Constitution.

The first deprivation of constitutional rights alleged is that while plaintiff was awaiting trial, he was forced to work in the County Jail where he was confined, the work consisting of washing shelves in the kitchen of the County Jail. This Court cannot rule as a matter of law that plaintiff's allegations do not amount to a deprivation of

Albert L. Wagner and E. R. Vaughn, Sacramento, Cal., for plaintiff.

Chargin & Briscoe, Stockton, Cal., for defendants.

OLIVER J. CARTER, District Judge.

Plaintiff sues the sheriff, undersheriff and jailer of Colusa County, California, for money damages. Jurisdiction of this Court is invoked under 42 U.S.C.A. § 1983 which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to

1. Persons in charge of county jails in California have a duty to see that prisoners in their custody receive medical care if they are clearly in need of it. This duty is recognized in California Penal Code, § 673, formerly § 681, which provides in part:
"It shall be unlawful to use in the reformatories, institutions, jails, state hospitals or any other state, county, or city institution any cruel, corporal or unusual punishment or to inflict any treatment *or allow any lack of care whatever which would injure or impair the health* of the prisoner, inmate, or person confined * * *." (Emphasis supplied.)
However, plaintiff does not rely on this statute as a basis for liability.

his right to be free from involuntary servitude under the Thirteenth Amendment to the Federal Constitution. The determination of this issue will depend upon the proof adduced at the trial of the general issue.

It is also very questionable whether a jailer has the power under California law to require a person in jail awaiting his trial to clean the kitchen of the jail. California Penal Code, § 4017 provides in part:

"Persons confined in the county jail under a final judgment of imprisonment rendered in a criminal action or proceeding, may be required by an order of the board of supervisors to perform labor on the public works or ways in the county."

In the case of In re Hudspeth, 100 Cal.App. 478, 480, 280 P. 179, 180, the court discussed the fact that the word "final" had just been inserted in Section 4017 by amendment:

"Amendment was so made probably in recognition of the law that such requirement as to labor on the public works might not be enforced against a defendant whose sentence had not become final."

■ Therefore it is clear that in California labor on the public works cannot be required of a defendant unless he is confined under a final judgment of imprisonment. As to what constitutes labor on the public works, Section 4017 further provides:

" 'Labor on public works' defined. The phrase 'labor on the public works' as used in this section shall include among other things clerical and menial labor in the county jail . * * *."

■ Thus it may be that washing shelves in the kitchen of the county jail would be menial labor in the county jail, and would constitute labor on the public works which cannot be required of a defendant who is not confined under a final judgment of imprisonment, thereby depriving plaintiff of his constitutional rights under the Fourteenth Amendment. Accordingly this aspect of plaintiff's case cannot be disposed of at the pleading stage.

■ The next deprivation of constitutional rights alleged is, in a sense, twofold: that after plaintiff was severely injured, defendants refused to furnish plaintiff medical care, and secondly that defendants refused plaintiff's request to secure medical care for himself at his own expense. It is further alleged that defendants' deliberate refusal to furnish medical care aggravated plaintiff's injuries and caused him permanent injury.

There is little precedent for an action under the Civil Rights Statutes for injuries resulting from a deliberate refusal to furnish medical care, but it is the opinion of this Court that when the refusal takes place under color of state law, such acts constitute a deprivation of life, liberty and property without due process of law in violation of the Fourteenth Amendment to the Federal Constitution.

Gordon v. Garrson, D.C.E.D.Ill., 77 F.Supp. 477, 478, is a case similar to the case at bar. There a person confined in a state prison sued those in charge of the prison under the Federal Civil Rights Act for damages, alleging a failure to furnish medical care after the plaintiff received personal injuries while in prison. The court outlined the plaintiff's theory as follows:

"He does not charge that either defendant caused his original injury but does aver that by solitary confinement and refusal to grant plaintiff the right to receive food or medical aid, defendants, by their neglect and negligence, caused plaintiff to suffer permanent injuries of a serious nature."

The court denied a motion to dismiss the complaint, holding that it stated a claim for relief under the Civil Rights Act. The complaint was based upon deliberate acts although the terms 'neglect' and 'negligence' were used.

Further support for this type of action under the Civil Rights Act is found in a dictum in the opinion of Justice Rutledge in Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. In discussing the various rights protected by the civil and criminal Civil Rights Statutes, Justice Rutledge said, 325 U.S. at page 127, 65 S.Ct. at page 1048:

"* * * the necessary import of the decisions is that the right to be free from deprivation of life itself, without due process of law, that is, through abuse of state power by state officials, is as fully protected as other rights so secured."

A refusal to furnish medical care when it is clearly necessary, such as is alleged here, could well result in the deprivation of life itself; it is alleged that plaintiff suffered paralysis and disability from which he will never recover. This amounts to the infliction of permanent injuries, which is, to some extent, a deprivation of life, of liberty and of property. Since these rights are protected by the Fourteenth Amendment to the Federal Constitution, the complaint sufficiently alleges the deprivation of a right, privilege or immunity secured by the Constitution and laws of the United States.

The complaint also sufficiently alleges that the acts and omissions complained of occurred under color of state law. In this connection it is immaterial that the complaint is based in part on allegations of a failure or refusal to act, rather than an affirmative wrongful act. Furthermore, the alleged wrong is properly described as being done under color of state authority in spite of the fact that the officials involved allegedly exceeded their authority or acted (or failed to act) in contravention to the dictates of their duty. See Robeson v. Fanelli, D.C.S.D. N.Y., 94 F.Supp. 62, 70, in which the court said:

"When an official is confronted by a situation with respect to which the state has invested in him authority to deal, his misfeasance or nonfeasance with regard thereto takes place 'under color of law.' Wrongful abuse of power or disregard of duty is nonetheless attributable to the state. Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. Classic, 1941, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; * * * United States v. Trierweiler, D.C.E.D.Ill. 1943, 52 F.Supp. 4."

In United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, the Court said:

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." (Citations omitted.)

Therefore plaintiff has sufficiently alleged a claim for relief under 42 U.S.C.A. § 1983. Defendants do not seriously dispute this. The following statement is found on page two of defendants' memorandum in answer to points and authorities filed by plaintiff in opposition to defendants' motion to dismiss:

"It is not contended that a civil remedy does not exist in favor of the plaintiff under the provisions of 42 U.S.C.A. § 1983, and the cases cited by the plaintiff support this conclusion * * *"

What defendants do contend is that plaintiff has no capacity to sue in this Court. This contention is based on the fact that after the alleged improper treatment of plaintiff by defendants, plaintiff was convicted of a felony and is presently confined in the California State Prison at Folsom. Defendants rely on California Penal Code, § 2600 which provides:

"A sentence of imprisonment in a State prison for any term less than life suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority, or power during such imprisonment. But the board [Adult Authority] may restore to

said person during his imprisonment such civil rights as the board may deem proper * * *."

The affidavit of E. A. Burkhart, Executive Secretary of the California Adult Authority, recites that plaintiff's civil rights have not been restored for the purpose of bringing this action, and plaintiff does not controvert this.

Although this Court has not been referred to any California case directly holding that California Penal Code, § 2600 deprives an imprisoned felon of capacity to maintain a civil suit in the state courts, there are numerous New York decisions directly in point which construe a New York statute substantially similar to California Penal Code, § 2600. New York Penal Law, McK. Consol.Laws, c. 40, § 510 provides:

> "A sentence of imprisonment in a state prison for any term less than for life, forfeits all the public offices, and suspends, during the term of the sentence, all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced."

The courts of New York have construed this statute to mean that an imprisoned felon cannot maintain a civil action as plaintiff. Green v. State, 251 App.Div. 108, 295 N.Y.S. 672, affirmed 278 N.Y. 15, 14 N.E.2d 833; Application of White, 166 Misc. 481, 2 N.Y.S.2d 582; Lehrman v. State, 176 Misc. 1022, 29 N.Y.S.2d 635. In view of the New York decisions it is the conclusion of this Court that the California Supreme Court would hold that California Penal Code, § 2600 suspends the right of an imprisoned felon to maintain a civil action, and therefore this Court will proceed upon the assumption that Section 2600 has that effect in the courts of the State of California.

■ The next inquiry is whether Section 2600 has the effect of depriving an imprisoned felon, such as the plaintiff here of his capacity to pursue a federal remedy in a United States District Court in California. Defendants contend that it does, relying on Federal Rule of Civil Procedure 17(b), 28 U.S.C.A. which provides:

> "The capacity of an individual * * * to sue or be sued shall be determined by the law of his domicile. * * * In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held * * *."

It is the opinion and conclusion of this Court, however, that a literal application of Rule 17(b) to the case at bar would bring about an artificial and erroneous result. Such a provision cannot be applied mechanically to every case. The wisdom of a cautious attitude is well illustrated by defendants' position here; the logical corollary of defendants' argument is that if plaintiff were imprisoned for life, his remedy for the alleged invasion of his federally protected constitutional right would be completely lost through the operation of a local statute.

■ The federal civil rights statute under which this action is brought indicates that the right of action it creates is not limited to citizens or to individuals whose state civil rights are intact: Section 1983 creates a right of action in " * * * any citizen of the United States *or other person within the jurisdiction thereof* * * *." (Emphasis supplied.) Plaintiff is a person within the jurisdiction of the United States in spite of the fact that he is an imprisoned felon, and consequently is empowered to sue in the federal courts under this section. This view is also taken by the United States District Courts in Illinois. In Siegel v. Ragen, D.C.N.D.Ill., 88 F. Supp. 996, 998 the court said:

> "The fact that plaintiffs are incarcerated in a penitentiary under convictions for felonies, does not deprive them of the right to invoke the provisions of the Civil Rights Act, since that Act applies to any person within the jurisdiction of the United States. Sellers v. Johnson, D.C., 69

F.Supp. 778; Gordon v. Garrson, D.C., 77 F.Supp. 477, 479."

And in Gordon v. Garrson, D.C.E.D.Ill., 77 F.Supp. 477, 479 the court put it this way:

"But due process of law and equal protection of the laws are guaranteed not only to citizens but to any person and Civil Rights Act provides a remedy for deprivation of these rights. Sellers v. Johnson, D.C., 69 F.Supp. 778. It would seem that the statute applies not only to citizens but to any 'person within the jurisdiction' of the United States."

Support for this position is also found in a strong dictum of the United States Supreme Court. In Roberts v. United States District Court for Northern District of California, 339 U.S. 844, 70 S.Ct. 954, 955, 94 L.Ed. 1326, the petitioner, who was confined in a California state prison, was denied the right to proceed *in forma pauperis* by the United States District Court on the theory that California Penal Code, § 2600 had deprived petitioner of his citizenship, and therefore he was not a citizen as required by 28 U.S.C.A. § 1915. Section 1915 provides for proceedings *in forma pauperis* in the following terms:

"(a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a citizen who makes affidavit that he is unable to pay such costs * * *."

The Supreme Court disapproved of the action of the district court, saying:

"The decision of the District Court is in error. Citizenship for the purpose of *in forma pauperis* proceedings in the federal courts is solely a matter of federal law. Congress has not specified criminal convictions, except for desertion and treason, as grounds for loss of citizenship."

The reasoning of the Supreme Court applies with even greater force to the case at bar, because the statute under which this action is brought extends a right to any citizen or other person within the jurisdiction of the United States, while the statute considered in the Roberts case applied only to citizens.

Although neither the decisions of the United States District Courts in Illinois nor the Supreme Court opinion cited above specifically mention Federal Rule of Civil Procedure 17(b), it is the opinion of this Court that consideration of the Rule would not have altered those decisions. Plaintiff has the capacity to bring this action.

It is ordered that the defendants' motion to dismiss the amended complaint be, and the same is hereby denied.